**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eddie Maloney,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Office of Navajo and Hopi Indian Relocation,<br><br>　　　　　Defendant. | No. CV-23-08632-PCT-SMB<br><br>**ORDER** |

Pending before the Court is Plaintiff Eddie Maloney's ("Maloney") Motion for Summary Judgment (Doc. 16) and Defendant Office of Navajo and Hopi Indian Relocation's ("ONHIR") Cross-Motion for Summary Judgment (Doc. 18.) The parties have fully briefed the Motions. Now, having reviewed the briefing and relevant case law, the Court will deny Plaintiff's Motion for Summary Judgment (Doc. 16) and grant ONHIR's Cross-Motion for Summary Judgment (Doc. 18).

**I.　BACKGROUND**

**A. The Settlement Act**

This is a Navajo-Hopi Land Settlement Act (the "Settlement Act") case. 25 U.S.C. §§ 640d–640d-31 (repealed 1974); *see also Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1120–22 (9th Cir. 1989) (explaining the history of the Settlement Act); *see also Herbert v. Office of Navajo and Hopi Indian Relocation*, CV06-03014-PCT-NVW, 2008 WL 11338896, at *1 (D. Ariz. Feb. 27, 2008) (same). In 1974, Congress enacted the Settlement Act, Pub. L. No. 93-531, § 1, 88 Stat. 1712, which

authorized the partition of the Joint Use Area between the Hopi and the Navajo Tribes, resulting in the Hopi Partition Land ("HPL") and the Navajo Partition Land ("NPL"). 25 U.S.C. § 640d *et seq.* The Settlement Act required members from each tribe to relocate to the land partitioned for their respective tribal affiliation. *Id.* § 640d-13(a). The Settlement Act also authorized and created a benefit program to compensate those individuals who were forced to abandon their homes and relocate to a partitioned area. *Id.* §§ 640d-13(a), 14(b)(1)–(2). The Settlement Act confers jurisdiction to the United States District Court for the District of Arizona to review appeals from eligibility determinations made by ONHIR that the Act established to compensate relocated individuals. *Id.* § 640d-14(g).

### B. Factual and Procedural History

Maloney is an enrolled member of the Navajo Nation born on April 28, 1948 (Doc. 17 ¶¶ 1–2.) Maloney's maternal grandparents possessed enumerated homesites at Black Mesa on the HPL and Cow Springs on the NPL. (*Id.* ¶ 7.) His grandparents and other relatives received relocation assistance benefits from the Bureau of Indian Affairs ("BIA"). (*Id.* ¶ 9–10.) The BIA also enumerated Maloney's parents at the family's NPL homesites. (*Id.* ¶ 5.) His mother, however, did not apply for or receive relocation assistance benefits, as she feared the family would lose their land and grazing rights upon relocation. (*Id.* ¶ 4.) The BIA enumerated Maloney, his wife, and their children at his mother's NPL homesite on February 13, 1975. (*Id.* ¶ 6.) However, the BIA did not enumerate Maloney nor his wife at his grandparents' Black Mesa homesite on the HPL. (*Id.* ¶ 8.)

On September 14, 2009, Maloney sent an application for relocation assistance benefits to ONHIR. (*Id.* ¶ 11.) Therein, he denoted his residences as being located on the HPL and in Cow Springs on the NPL. (*Id.* ¶¶ 12–13.) On October 2, 2014, ONHIR denied Maloney's application. (*Id.* ¶ 14.) ONHIR reasoned that:

> According to the [BIA's] 1974-1975 Enumeration, you, your wife, and your children were residents of the Navajo Partitioned Lands ("NPL") at QQL 54 NW 163. Your parents (Gray and Nora Maloney) and your siblings were also enumerated on the NPL at QQL 54 NW 164. Your

> mother was also enumerated on the NPL at QQL 61-64, 246, 247, and 271. These NPL sites included numerous dwellings. Notably, your parents did not apply for Relocation Benefits.

(Doc. 13 ("CAR") at 38.)  Maloney appealed ONHIR's decision, and the Independent Hearing Officer ("IHO") dismissed the case after Maloney failed to appear for two pre-hearing conferences.  (Doc. 17 ¶¶ 16–17.)  Maloney wrote to the IHO, explaining that his failure to appear resulted from a lack of phone service and transportation to Flagstaff.  (*Id.* ¶ 18.)  The IHO, finding no good cause to reopen the appeal, directed Maloney to contact ONHIR's Executive Director.  (*Id.* ¶ 19.)  In a July 2016 memorandum, the Executive Director instructed the IHO to reopen the appeal.  (*Id.* ¶ 20.)

Maloney's hearing was eventually held on August 18, 2017.  (*Id.* ¶¶ 21–23.)  At the hearing, Maloney offered testimony from himself and a relative, and ONHIR offered testimony from an employee.  (*Id.* ¶ 24.)  After the hearing, both parties submitted post-hearing memoranda.  (*Id.* ¶ 25.)  On March 19, 2018, the IHO issued a decision denying Maloney's appeal, and on May 24, 2018, the IHO denied Maloney's request for reconsideration.  (*Id.* ¶¶ 26–28.)  On June 20, 2018, ONHIR issued its Notice of Final Agency Action affirming the IHO's decision and ONHIR's initial denial of Maloney's 2009 application.  (*Id.* ¶ 29.)  After receiving the Notice, Maloney brought this action for review of ONHIR's decision pursuant to 28 U.S.C. § 1331, 5 U.S.C. §§ 701–706, and the Settlement Act.  (*See generally* Doc. 1.)

## II.  LEGAL STANDARD

"Unless Congress specifies otherwise, we review agency action under the Administrative Procedure Act (the APA), 5 U.S.C. § 706(2)(A)."  *Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 914 (9th Cir. 1995).  A reviewing court can reverse an ONHIR decision only if the decision is "arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence."  *Bedoni*, 878 F.2d at 1122; *see* 5 U.S.C. § 706 (2)(A), (E).  A decision is arbitrary and capricious if the agency:

> [H]as relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the

agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) ("Substantial evidence is more than a mere scintilla, but less than a preponderance[.]"). Accordingly, the Court will "sustain an agency action if the agency has articulated a rational connection between the facts found and the conclusions made." *Pac. Coast Fed'n of Fishermen's Ass'ns v. U.S. Bureau of Reclamation*, 426 F.3d 1082, 1090 (9th Cir. 2005). Moreover, the Court must give deference to the agency's decision. *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 994 (9th Cir. 2014).

The Court may grant a motion for summary judgment where no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, in reviewing an administrative decision under the APA, the Court's function "is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985). The agency, not the Court, is the fact-finder. *See id.* Therefore, "summary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did." *Id.* at 770; *see also Burnside v. Office of Navajo and Hopi Relocation*, No. CV-15-08233-PCT-PGR, 2017 WL 4284576, at *7 (D. Ariz. Sept. 27, 2017) ("In the APA context, summary judgment is the mechanism through which the reviewing court determines as a matter of law whether the evidence in the administrative record reasonably permitted the agency to make the decision it did.").

## III. DISCUSSION

Maloney challenges the IHO's finding that he was not a legal resident of HPL as

of December 22, 1974. "Residence is established by proving that the head of household and/or his/her immediate family were legal residents as of December 22, 1974, of the lands partitioned to the Tribe of which they are not members." 25 C.F.R. § 700.97. Residence "is meant to be given its legal meaning [] which requires an examination of a person's intent to reside combined with manifestations of that intent." 49 Fed. Reg. 22277 (May 29, 1984).

The party seeking benefits bears the burden of proving residency on HPL land. *Charles v. ONHIR*, 774 F. App'x 389, 390 (9th Cir. 2019). To overcome this burden, "[t]he correct standard is 'intent to reside combined with manifestations of that intent.'" *Id.* (quoting 49 Fed. Reg. 22, 277). When assessing an applicant's manifestations of intent to maintain legal residence in partitioned lands, "ONHIR looks to multiple factors including: ownership of livestock, ownership of improvements, grazing permits, livestock sales receipts, homesite leases, public health records, school records, military records, employment records, mailing address records, banking records, driver's license records, tribal and county voting records, home ownership or rental off the disputed area, Social Security Administration records, Joint Use Area Roster, and other relevant data." *Begay v. ONHIR*, No. CV-20-08102-PCT-SMB, 2021 WL 4247919, at *5 (D. Ariz. Sept. 17, 2021) (internal quotation marks omitted); *see* 49 Fed. Reg. 22, 278. The BIA enumeration serves as prima facie evidence of residency which Plaintiff must rebut. *Begay v. ONHIR*, 305 F. Supp. 3d 1040, 1049 (D. Ariz. 2018), *aff'd*, 770 F. App'x 801 (9th Cir. 2019); *see also Charles*, 774 F. App'x at 390.

### A. BIA Enumeration

Maloney argues that the IHO erred by treating the BIA enumeration as conclusive proof of his NPL residency. (Doc. 16 at 6.) The Court disagrees. The IHO properly recognized that the enumeration acts both as prima facie evidence of the applicant's residence as well as a mechanism for creating a presumption of residency. (CAR 221, 225); *Begay*, 305 F. Supp. 3d at 1045 ("[A] BIA enumeration alone cannot establish residence, but it may be used as prima facie evidence of residency that Plaintiff then has

the burden of disproving."). Adhering to that legal principle, the IHO found that the evidence, including Maloney's statements in his application for relocation benefits, interview with BIA enumerators, witness testimony, and enumerations related to other family members, supported the presumption that Maloney was an NPL resident. (CAR 226.) Thus, upon review, the Court finds that the IHO did not err by concluding the BIA enumeration was prima facie evidence of Maloney's residence.

Maloney also submits that the IHO improperly relied on BIA interviews of Maloney and family members to negate his legal residence. (Doc. 16 at 11.) Reviewing the IHO's decision, however, does not support that argument. (*See generally* CAR 214–226.) The IHO did consider the recorded statements of Maloney's family members, but did not ascribe conclusive weight to these statements. (*Id.*) Instead, the IHO considered the statements alongside the other evidence to determine Maloney's residency. Therefore, the Court finds the IHO did not err in considering Maloney's family members' statements as a factor in determining residency.

### B. Credibility Findings

The Court gives great deference to an IHO's witness credibility determinations. *Begay*, 305 F. Supp. 3d at 1049. Like an administrative law judge ("ALJ"), the IHO is in the unique position to witness the testimony at the hearing. *See Sarvia-Quintanilla v. U.S. I.N.S.*, 767 F.2d 1387, 1395 (9th Cir. 1985) ("[The ALJ] alone is in a position to observe [a witness's] tone and demeanor, to explore inconsistencies in testimony, and to apply workable and consistent standards in the evaluation of testimonial evidence. He is . . . uniquely qualified to decide whether [a witness'] testimony has about it the ring of truth.").

A court analyzing a IHO's credibility determination will only overturn such a determination where the IHO did not provide specific and cogent reasons supported by substantial evidence to do so. *Begay*, 305 F. Supp. 3d at 1049 (citing *De Valle v. I.N.S.*, 901 F.2d 787, 792 (9th Cir. 1990)). Minor inconsistencies that go to the heart of applicant's claim, like here, will support an adverse credibility determination. *See Kaur*

*v. Gonzales*, 418 F.3d 1061, 1064 (9th Cir. 2005).

Maloney claims the IHO erred when it found witness Darrell Woody's testimony to be indefinite and not credible. (Doc. 16 at 14.) The IHO made an adverse credibility finding because Mr. Woody was only nine to eleven years old at the time of his testimony, and his testimony regarding Maloney's presence on the HPL was "too indefinite to support applicant's claim to residency on [the] HPL and is not credible testimony as to any specific time period or year." (CAR 220.) As Defendant points out, Mr. Woody did not quantify Maloney's visits to Black Mesa. (Doc. 18 at 17.) Instead, Mr. Woody testified that he saw Maloney during the winter of 1973 to 1975, but did not otherwise denote Maloney's activity on the HPL. Further, Mr. Woody testified that, during the school year, Maloney would drive him home to the HPL because Cow Springs and Black Mesa were near one another. However, Mr. Woody did not testify that Maloney stayed on the HPL such that his presence was "substantial, regularly occurring, or of sufficient duration." *See Yazzie v. ONHIR*, CV-23-08510-PCT-JAT, 2024 WL 3345192, at *4 (D. Ariz. July 8, 2024). Therefore, based on the evidence and Mr. Woody's testimony, the IHO properly considered and discounted the testimony in determining Maloney's residency.

**C. Arbitrary and Capricious**

Maloney argues that the IHO's decision is arbitrary and capricious because he failed to evaluate all the evidence and the decision is inconsistent. (Doc. 16 at 12.) According to Maloney, the IHO finding his testimony to be "fully credible" cannot then support the IHO's decision to discount Maloney's testimony regarding the time he lived at Black Mesa on the HPL. (*Id.*)

The IHO, however, wrote that Maloney was a "credible witness" as it relates to his employment, residence at Cow Springs, and visitation with his relatives on Black Mesa. (CAR 220.) The difference between "fully credible" and "credible" is material here, as a HO is not compelled to ascribe conclusive weight to every aspect of a "credible" witness's testimony. *See Yazzie*, 2024 WL 3345192, at *4 ("[The HO] is . . . uniquely

qualified to decide whether [a witness]'s testimony has about it the ring of truth." (internal quotation marks omitted)); *see also Edgar G.C. v. Garland*, 109 F.4th 1230, 1247 (9th Cir. 2024) (asserting the proposition that credibility does not always equate to persuasiveness). And in fact, the IHO made specific findings as to which parts of Maloney's testimony was credible and which were not. As noted, the IHO found the testimony regarding employment, residency in Cow Springs (NPL), and visitation to Black Mesa (HPL) as credible. (CAR 220.) Later, the IHO determined that the testimony regarding unfamiliarity with relocation benefits was suspect because, if Maloney's contacts with his family in Black Mesa were substantial, then he would have had ample knowledge of the relocation process. (*Id.* 225.) Indeed, Maloney's grandparents, with whom he lived, received relocation benefits. (*See* Doc. 17 ¶ 9.) And, his mother, knew about the relocation benefits but did not apply for fear of losing land and grazing rights. (*Id.* ¶ 4.) Thus, it was reasonable for the IHO to conclude that, given Maloney's position, he ought to have known about the relocation process. (*See* CAR 225.)

In response to ONHIR's Cross-Motion for Summary Judgment, Maloney cites to "substantial evidence" demonstrating that Plaintiffs legal residence was on the HPL. (Doc. 20 at 2.) The Court has reviewed CAR 15–17, 134, 135, 137–39, 144, 149–50, 152 and disagrees. The evidence therein supports the HO finding that he resided on the NPL.

## IV. CONCLUSION

For these reasons, the Court will deny Plaintiff's Motion for Summary Judgment (Doc. 16) and grant Defendant's Cross-Motion for Summary Judgment (Doc. 18). The HO's decision to deny Plaintiff's relocation benefits appeal, based on a lack of legal residence, was supported by substantial evidence and not arbitrary and capricious. Accordingly,

**IT IS HEREBY ORDERED** that the Independent Hearing Officer's decision dated March 20, 2018 (CAR 213–226) is affirmed.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment

(Doc. 16) is denied.

**IT IS FURTHER ORDERED** that Defendant's Cross-Motion for Summary Judgement (Doc. 18) is granted.

**IT IS FINALLY ORDERED** that the Clerk of the Court shall enter judgment and terminate this case.

Dated this 30th day of January, 2025.

_____
Honorable Susan M. Brnovich
United States District Judge